Michael BREDBERG, Appellee,

v.

**PEPSICO, INC., A Corporation, and Pepsi Cola General Bottlers, Inc., a Corporation, Appellants,**

Joyce's Incorporated d/b/a Joyce's Food Land, Defendant.

No. 94–1046.

Supreme Court of Iowa.

July 24, 1996.

Rehearing Denied Sept. 13, 1996.

Mark A. Woollums and Martha L. Shaff of Betty, Neuman & McMahon, L.L.P., Davenport, for appellant PepsiCo, Inc.

Dawn R. Siebert of Finley, Alt, Smith, Scharnberg, May & Craig, P.C., Des Moines, for appellant Pepsi Cola General Bottlers, Inc.

Richard B. Maher, Glenwood, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

The issue before us on further review is whether plaintiff Michael Bredberg presented substantial evidence at trial that either defendant PepsiCo, Inc., or defendant Pepsi Cola General Bottlers, Inc., was strictly liable for injuries he sustained when a glass bottle of soda pop he purchased shattered. The jury believed so, and the district court did not disturb the jury's verdicts in ruling on defendants' motions for judgment notwithstanding the verdict and new trial. The court of appeals reversed this decision. As we believe a jury question was generated by plaintiff's evidence, we vacate the court of appeals decision and affirm the district court's judgment in favor of plaintiff.

I. *Background facts and proceedings.* On Sunday, July 22, 1990, Michael Bredberg and others went to defendant Joyce's Food Land grocery store in Laurens to purchase various items for a cookout. After exiting the store, at about 1:45 on a warm afternoon, Bredberg informed the persons he was with that he was "going to get a pop." Outside the store, there were three soft drink vending machines. One machine, which had the "Pepsi" logo on the outside, contained sixteen ounce glass bottles of various flavored soda pops. One of the young men with whom Bredberg went to the grocery store requested he purchase a "Mountain Dew" for him. When Bredberg reached the soda pop machines, he noticed Mountain Dew was not available but "Diet Mountain Dew" was. Therefore, Bredberg proceeded to purchase one Diet Mountain Dew bottle from the machine.

After inserting change into the machine, Bredberg pushed the Diet Mountain Dew button. At the time he did this, he stepped to his right to view the contents of the soda pop machine located directly to the right of the machine in which he deposited money and selected a Diet Mountain Dew. Bredberg deposited money in this machine and selected a soda pop of his choice.

After purchasing his soda pop, Bredberg stepped back over to the vending machine from which he selected the Diet Mountain Dew. According to plaintiff, the following events transpired:

> ... I didn't see the bottle anywhere around so I ... bent down and lifted up the thing and [saw] the bottle.... [I]t had come down on its neck and was wedged into the left hand side of the machine, so then I reached in there and ... pulled the bottle out.
>
> . . . .
>
> I had the bottle [of Diet Mountain Dew] in my right hand by the neck. I put it in my left hand where it started to get fat and I turned around to walk over to the other machine. *It started slipping out, so I slid down on the bottle for a better grip ... and caught it ... and that's when it exploded.*

The alleged explosion of the Diet Mountain Dew glass bottle caused severe and permanent injuries to Bredberg's left hand. At the time of the accident, Bredberg was approximately six feet tall and fifteen years old. There were no other eye witnesses to the alleged explosion.

Due to the accident and his resulting permanent injuries, Bredberg brought an action at law against Joyce's Food Land, PepsiCo, Inc. (PepsiCo), and Pepsi Cola General Bottlers, Inc. (Pepsi Cola).[1] In the petition, Bredberg brought numerous claims against the named defendants including that PepsiCo and Pepsi Cola were strictly liable for his injuries and resulting damages on products liability grounds. Bredberg also claimed

---

1. PepsiCo owns the formula and trademarks associated with Diet Mountain Dew. PepsiCo issues licenses to bottlers, such as Pepsi Cola, granting them the right to bottle and distribute Pepsi Cola products, such as Diet Mountain Dew. Pepsi Cola General Bottlers and other bottlers purchase the Diet Mountain Dew concentrate from PepsiCo and mix, bottle, and sell the product to their customers. The bottler is required to mix the concentrate pursuant to a formula provided by PepsiCo. Decisions pertaining to container alternatives, such as returnable/non-returnable containers, aluminum cans and plastic, are left to the bottler. PepsiCo does, however, have control of the bottle logo for trademark protection purposes.

Joyce's Food Land was responsible for his injuries and resulting damages on grounds of negligence.

The defendants denied all claims made against them and the case proceeded to a jury trial. The particular bottle that Bredberg claimed exploded was not available for examination by the jury or analysis by any of the expert witnesses. The broken bottle had been swept up and thrown away after the accident.

Dr. Thomas D. McGee, a professor of materials science and engineering at Iowa State University, testified on behalf of the plaintiff as an expert on carbonated beverage bottles and their breakage.[2] Among other things, Dr. McGee testified that the breaking of the bottle was a spontaneous explosion based on the plaintiff's explanation and the physical evidence including the final location of the bottle fragments. He also testified that the physical evidence supports the conclusion that the plaintiff was holding the bottle when it broke.

Even though the bottle could not be produced for examination and analysis, defendants did not dispute that Bredberg had been injured by a bottle which (for some reason) shattered after he purchased it from the vending machine located outside of the grocery store. Defendants vigorously disputed Bredberg's claim, however, that the bottle had exploded. They contended, instead, that Bredberg dropped the bottle and injured his left hand while trying to catch the bottle before it hit the ground and shattered upon impact.

Defendants elicited expert opinion testimony from Dr. Ronald Caporali, a Ph.D. in ceramic science, who serves as an independent consultant in glass fracture and fracture analysis. Dr. Caporali opined that the Diet Mountain Dew bottle broke due to an impact fracture, as opposed to a pressure fracture as opined by Dr. McGee. Dr. Caporali's testimony, in addition to lay witness testimony, supports defendants' contention that Bredberg dropped the bottle and the resulting impact with the ground caused the bottle to shatter.

At the close of plaintiff's case-in-chief and again at the close of all the evidence, defendants PepsiCo and Pepsi Cola each made a motion for a directed verdict. *See* Iowa R.Civ.P. 216. In its motion, PepsiCo contended a verdict should be directed in its favor because Bredberg did not present sufficient evidence that the bottle of Diet Mountain Dew was unreasonably dangerous or in a defective condition at the time it entered the stream of commerce:

> ... Plaintiff has not submitted a jury case on the issues of defective condition [or] unreasonably dangerous condition.... There is no evidence ... that the bottle was manufactured and distributed according to design standards dictated by PepsiCo, Inc.... We do not have this bottle, [and] we do not know who manufactured it.

In its motion for directed verdict, Pepsi Cola also contended there was not sufficient evidence to submit Bredberg's strict liability claim against it to the jury:

> [T]here is absolutely no evidence in this case that the bottle in question was in a defective condition ... at the time of sale. Without that element, evidence of a defective condition at the time of sale, the plaintiff's claim for products liability against Pepsi Cola ... must fail.
>
> . . . .
>
> Furthermore, there is no evidence that the product itself, the bottle, or anything about the contents thereof, was unreasonably dangerous.

The court overruled the motions and submitted the case to the jury for deliberations. The court instructed the jury that in order to find defendants PepsiCo or Pepsi Cola responsible for Bredberg's injuries under a theory of strict liability, a preponderance of the evidence must show, among other things, that:

> . . . .
>
> 3. The Diet Mountain Dew bottled soda was in a defective condition at the time it

2. Dr. McGee received his Ph.D. in ceramic engineering and metallurgy in 1961. He has been a full professor at Iowa State University and has taught glass technology and engineering classes since 1965.

left defendants' control in one or more of the following ways:

a. In that it exploded in plaintiff's hand.

4. The defective condition was unreasonably dangerous to the plaintiff.

. . . .

See *Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911, 916 (Iowa 1990); Restatement (Second) of Torts § 402A (1965); II Iowa Civ. Jury Instructions 1000.1 (1991).[3]

The jury returned a special verdict in favor of Bredberg, setting his total damages at $112,134.70. The jury assessed fault between the parties as follows:

| | |
|---|---|
| Michael Bredberg | 50% |
| Joyce's Food Land | 5% |
| Pepsi Cola | 25% |
| PepsiCo | 20%. |

See Iowa Code § 668.3(2) (1993). The court entered judgment on the verdict reducing the total award by the amount of plaintiff's comparative fault (or fifty percent) to $56,067.35.

In response to the verdicts, PepsiCo and Pepsi Cola each filed a motion for judgment notwithstanding the verdict and, in the alternative, new trial. Iowa R.Civ.P. 243, 244(f). Joyce's Food Land did not file post-trial motions or an appeal from the judgment. Bredberg resisted the motions.

■ PepsiCo's and Pepsi Cola's motions for judgment notwithstanding the verdict necessarily must rest on the same grounds as articulated at trial in their motions for directed verdict, outlined above. *See Wieseler v. Sisters of Mercy Health Corp.*, 540 N.W.2d 445, 448 (Iowa 1995). Their alternative motions for new trial were premised on their belief that the verdict reached by the jury was a compromise or "quotient" verdict and, therefore, was inconsistent with the facts and law and did not effectuate substantial justice. *See* Iowa R.Civ.P. 244(f).

The district court overruled PepsiCo's and Pepsi Cola's motions. In its ruling on the motions for judgment notwithstanding the verdict, the court found plaintiff's testimony along with the testimony of Dr. McGee to constitute sufficient evidence to submit Bredberg's strict liability claims against PepsiCo and Pepsi Cola to the jury.

In its ruling on the alternative motions for new trial, the court found the jury's verdict did not fail to effectuate substantial justice as the facts were in dispute and the jury could assign fault to any party or parties it found accountable under the law.

PepsiCo and Pepsi Cola appealed the district court's judgment. *See* Iowa R.App.P. 1. We transferred the case to the court of appeals. *See* Iowa Code § 602.4102(2). That court reversed the district court's ruling on the motions for judgment notwithstanding the verdict and dismissed Bredberg's strict liability claims against PepsiCo and Pepsi

---

**3.** The court instructed the jury concerning the legal definition of defective and unreasonably dangerous:

A product is *defective* if it does not perform reasonably, adequately and safely:

1. In the normal or specified use intended by the defendant.

2. When it is used in a manner reasonably foreseeable by the defendant. A reasonably foreseeable use is a use or misuse of a product a designer, manufacturer, assembler, seller would expect of a reasonably prudent person who is likely to use the product under similar circumstances.

. . . .

A defective product is *unreasonably dangerous* if:

1. The danger is greater than an ordinary consumer with knowledge of the product's characteristics would expect it to be.

2. The danger outweighs the utility of the product.

3. The benefits of the design do not outweigh the risks. In determining whether the design benefits outweigh the risks, you may consider:

a. The seriousness of the harm posed by the design.

b. The likelihood that such danger would occur.

c. The mechanical feasibility of a safer alternate design.

d. The cost of an improved design.

e. The adverse consequences to the product and the user that would result from an alternative design.

f. Any other facts or circumstances shown by evidence having any bearing on the question.

*See Chown v. USM Corp.*, 297 N.W.2d 218, 220–21 (Iowa 1980); II Iowa Civ. Jury Instructions 1000.4, .5 (1994).

Cola.[4]

We granted Bredberg's application for further review. *See id.* § 602.4102(4).

II. *Standard and scope of review.* We review the district court's denial of a motion for judgment notwithstanding the verdict for correction of errors at law. *See Wieseler,* 540 N.W.2d at 448. Our only inquiry in assessing such a motion is to determine whether there is sufficient evidence to justify submitting the case to the jury. *Id.* In making this assessment, as did the district court, we view the evidence in the light most favorable to the party against whom the motion was made, taking into consideration every legitimate inference that may fairly and reasonably be made. *Id.* The motion should be denied if there is substantial evidence to support each element of the plaintiff's claims. *Id.* at 448–49.

We review a denial of a motion for new trial for abuse of discretion. *Shepherd Components, Inc. v. Brice Petrides–Donohue & Assocs., Inc.,* 473 N.W.2d 612, 618 (Iowa 1991). If a jury verdict is not supported by sufficient evidence and the verdict fails to effectuate substantial justice, a new trial may be ordered. *Thompson v. Rozeboom,* 272 N.W.2d 444, 446 (Iowa 1978). The reason for granting a new trial must fairly appear in the record. *Id.*

III. *Whether a jury question was generated on plaintiff's strict liability claims against PepsiCo and Pepsi Cola.* In the present case, defendants PepsiCo and Pepsi Cola both moved for judgment notwithstanding the verdict after the jury returned a special verdict finding PepsiCo twenty percent at fault and Pepsi Cola twenty-five percent at fault. Viewing the evidence and all

reasonable inferences therefrom in a light most favorable to Bredberg, we first accept his version of the facts as testified to at trial; that is, that he purchased a sixteen ounce, glass bottle of Diet Mountain Dew from a vending machine located in front of Joyce's Food Land in Laurens; that he had to reach in the machine's dispenser and pull the bottle out; that once out of the machine the bottle slipped while in his hand and as he grasped the slipping bottle it exploded in his hand; that Dr. McGee's testimony corroborated Bredberg's version of the facts that the bottle exploded and caused his injuries while he was holding it and not due to impact with the ground.

We recognize defendants presented evidence that disputed plaintiff's claim that the bottle exploded. This evidence in and of itself, however, is not entitled to presumptive truthfulness (at the directed verdict stage) as is plaintiff's evidence in support of his strict liability claims. Evidence is not made *in* substantial merely because more than one conclusion can be reached by the evidence presented. Substantial evidence is that which a reasonable person would find adequate to reach a conclusion (in this case, that the bottle and/or Diet Mountain Dew were defective and unreasonably dangerous).

Plaintiff's case against PepsiCo and Pepsi Cola was rooted in strict liability, not negligence. Strict liability claims rooted in Restatement (Second) of Torts section 402A generally involve factual issues to be resolved by a jury or other trier of fact. *Fell,* 457 N.W.2d at 918; *see Thiele v. Faygo Beverage, Inc.,* 489 N.E.2d 562, 585 (Ind.Ct.App. 1986) ("Whether a product is in a defective condition unreasonably dangerous is generally a question for the trier of fact.").[5] Proof

---

4. PepsiCo contends that its licensing agreement with Pepsi Cola is not sufficient to impute liability on it as a manufacturer. *See Tyler v. PepsiCo, Inc.,* 198 Ga.App. 223, 400 S.E.2d 673, 676 (1990). In *Tyler,* relied on by PepsiCo, the court of appeals concluded that, as a licensor, PepsiCo could not be held liable under a Georgia products liability statute as a "manufacturer," as defined in the statute. We do not find the *Tyler* decision relied on by PepsiCo to be persuasive for two reasons. First, the opinion is based on an interpretation of a statute unique to the state of Georgia; Iowa has no similar statute. Sec-

ond, the *Tyler* decision says nothing about whether PepsiCo could be held liable as a product "designer," as alleged by plaintiff against Pepsi-Co in the present case.

5. In strict liability actions involving exploding containers of carbonated soft drinks and beer, juries and courts have generally resolved issues of liability in favor of the injured plaintiffs. *See, e.g., Marko v. Stop & Shop, Inc.* 169 Conn. 550, 364 A.2d 217, 220–21 (1975) (strict liability action against manufacturer of bottle, bottler of carbonated beverage, and retailer alleging re-

that a product was sold in a defective, unreasonably dangerous condition can be made by circumstantial evidence. *Fell,* 457 N.W.2d at 918; *Aller v. Rodgers Mach. Mfg. Co.,* 268 N.W.2d 830, 834 (Iowa 1978); *Lee v. Crookston Coca–Cola Bottling Co.,* 290 Minn. 321, 188 N.W.2d 426, 434–35 (1971); *Holkestad v. Coca–Cola Bottling Co.,* 288 Minn. 249, 180 N.W.2d 860, 865 (1970); *Pittsburg Coca–Cola Bottling Works v. Ponder,* 443 S.W.2d 546, 549 (Tex.1969); *Dr. Pepper Co. v. Crow,* 621 S.W.2d 464, 465 (Tex.Civ.App.1981). Direct and circumstantial evidence are equally probative. Iowa R.App.P. 14(f)(16).

■ PepsiCo and Pepsi Cola are in different positions concerning the production of Diet Mountain Dew. PepsiCo is the designer and licensor of the finished product; PepsiCo does not dispute this fact. Pepsi Cola, on the other hand, is a manufacturer, bottler, and distributor of the product claimed by plaintiff to be defective and unreasonably dangerous. Pepsi Cola does not dispute that it manufactured the Diet Mountain Dew at issue in the present case or that manufacturers can be held strictly liable under Restatement (Second) of Torts section 402A. Under Iowa law, neither designers nor manufacturers are immune from strict liability claims.

*See* Iowa Code § 613.18 (1993) ("A person who is *not* the assembler, designer, or manufacturer, and who wholesales, retails, distributes, or otherwise sells a product is ... [i]mmune from any suit based upon strict liability in tort ... [and] [n]ot liable for damages based upon strict liability in tort...." (Emphasis added.)); *Duggan v. Hallmark Pool Mfg. Co.,* 398 N.W.2d 175, 178 (Iowa 1986).

PepsiCo and Pepsi Cola contend plaintiff presented no proof that the bottle, Diet Mountain Dew concentrate, or Diet Mountain Dew final product were defective at the time they left defendants' individual control. After an examination of the record, the evidence appears sufficient for us to conclude that the Diet Mountain Dew concentrate here was not damaged by any extraneous force after delivery to Pepsi Cola. *See Escola v. Coca Cola Bottling Co.,* 24 Cal.2d 453, 150 P.2d 436, 439 (1944) (negligence/res ipsa loquitur exploding bottle case; no evidence that bottle had been damaged after leaving control of defendant). Similarly, there has been no evidence presented that after Pepsi Cola mixed the concentrate, bottled the Diet Mountain Dew, and delivered the product to Joyce's Food Land, the finished product was

sponsibility for injuries caused by exploding bottle; jury verdict finding the bottle manufacturer responsible was supported by the evidence); *Embs v. Pepsi–Cola Bottling Co.,* 528 S.W.2d 703, 705–06 (Ky.1975) (strict liability action against bottler of carbonated beverage, distributor, and retailer alleging responsibility for injuries caused by exploding bottle; court held any person or entity engaged in the business of supplying products for use or consumption—including manufacturers, wholesalers, retail dealers, distributors or other middlemen—is subject to liability under Restatement (Second) section 402A); *Lee v. Crookston Coca–Cola Bottling Co.,* 290 Minn. 321, 188 N.W.2d 426, 434–35 (1971) (strict liability action against bottler of carbonated beverage for injuries caused by exploding bottle; trial court's refusal to submit strict liability claim to jury was reversible error as there was circumstantial evidence (plaintiff's testimony) that the product was defective when it left defendant's control); *Holkestad v. Coca–Cola Bottling Co.,* 288 Minn. 249, 180 N.W.2d 860, 865–66 (1970) (strict liability action against bottler of carbonated beverage and retailer for injuries caused by exploding bottle; instead of granting defendants' motion for directed verdict on plaintiffs' strict liability claim, evidence was sufficient for district court to have submitted strict liability instruction

to jury based on circumstantial evidence presented by plaintiff that bottle was defective); *Falstaff Brewing Corp. v. Williams,* 234 So.2d 620, 624 (Miss.1970) (strict liability action against brewing corporation and distributor for injuries caused by exploding bottle of beer; substantial evidence supported judgment for plaintiff that defendants should be held strictly liable for the accident); *Bialek v. Pittsburgh Brewing Co.,* 430 Pa. 176, 242 A.2d 231, 236 (1968) (strict liability action against brewing company, bottle manufacturer and distributor for injuries caused by exploding bottle of beer; when two or more defendants are named in strict liability action, plaintiff does not have burden to prove which defendant caused the alleged defect; Restatement (Second) of Torts section 402A only requires plaintiff to prove product was defective and unreasonably dangerous at the time it left the possession of the particular seller); *Beck v. Royal Crown Bottling Co.,* 433 S.W.2d 764, 768 (Tex.Civ.App.1968) (strict liability action against bottler of carbonated beverage and retailer for injuries caused by exploding bottle; conflicting testimony concerning circumstances leading to plaintiff's injuries generated a jury question on whether bottle was defective when it left defendant's control); 63 Am.Jur.2d *Products Liability* § 843, at 1211–12 (1984).

damaged to such an extent to make it defective or unreasonably dangerous. *See Gatlin v. Coca–Cola Co.,* 461 So.2d 452, 454 (La.Ct. App.1984) (strict liability exploding bottle case; "[t]here is no evidence that the bottle was not in substantially the same condition as when it left the plant, nor is there a showing that the bottle of Coca–Cola found by appellant was being used by him in a way not intended by the manufacturer.").[6]

PepsiCo does not dispute plaintiff's claim that it shipped the Diet Mountain Dew concentrate to Pepsi Cola for mixing, filling, and distribution. Pepsi Cola does not dispute that it mixed the concentrate, bottled the product, and shipped the product to Joyce's Food Land, a retail customer, for sale and consumption. It was plaintiff's burden to prove by a preponderance of the evidence that defendants PepsiCo and Pepsi Cola were strictly liable for plaintiff's injuries because, among other things, the bottle and/or product were in a defective condition and were unreasonably dangerous at the time the products left the possession of each defendant.

■ 1. *Defective condition.* In our view, plaintiff's testimony, corroborated by Dr. McGee, that the bottle exploded can be weighed by a jury as circumstantial evidence that the bottle and/or its contents were in a defective condition at the time they were placed into the stream of commerce. *See Lee,* 188 N.W.2d at 434 (even absent evidence of mishandling, explosion of bottle may be *circumstantial* evidence product was defective when it left defendant's control); *Holkestad,* 180 N.W.2d at 865 (same; there was enough evidence to submit strict liability instruction to jury); *cf. Fell,* 457 N.W.2d at 918. Assuming the bottle exploded, as we must in this case, it appears that either the bottle or the pressurized product inside was in a defective condition. *Cf. Franks v. National Dairy Prods. Corp.,* 282 F.Supp. 528, 531 (W.D.Tex.1968) ("[I]t has often been stated that in cases where an explosion is involved (such as in the exploding or breaking

bottle cases), the defect is so obvious as to warrant little or no discussion."), *aff'd,* 414 F.2d 682 (5th Cir.1969); *Ford Motor Co. v. Fulkerson,* 812 S.W.2d 119, 126 (Ky.1991) (exploding soda pop bottle has an "obvious" defect); *Kneibel v. RRM Enters.,* 506 N.W.2d 664, 667 (Minn.Ct.App.1993) ("[A] bottle that explodes is clearly defective . . . .").

Therefore, we conclude plaintiff's evidence as to product defect generated a jury question as against both the designer (PepsiCo) and manufacturer (Pepsi Cola) of the allegedly defective product.

■ 2. *Unreasonably dangerous.* In addition to showing product defect, plaintiff must also present substantial evidence that the product was unreasonably dangerous in order for plaintiff's strict liability claims against PepsiCo and Pepsi Cola to be submitted to the jury. Without hesitation, we believe an exploding bottle of Diet Mountain Dew is unreasonably dangerous as the defect which causes the explosion is not "one contemplated by the user or consumer which would be unreasonably dangerous to him in the normal and intended use or consumption thereof." *See Aller,* 268 N.W.2d at 834; Restatement (Second) of Torts § 402A cmt. i; *see, e.g., Robertson v. Gulf South Beverage, Inc.,* 421 So.2d 877, 879–80 (La.1982) (in strict liability action against bottler of 32–ounce returnable bottle of Pepsi–Cola, explosion of such magnitude made bottle unreasonably dangerous); *Van Duzer v. Shoshone Coca Cola Bottling Co.,* 103 Nev. 383, 741 P.2d 811, 814 (1987) (in strict liability action against bottler of Canada Dry Salt–Free Seltzer and the manufacturer of the glass bottle containing the seltzer for injuries sustained by a supermarket cashier when the bottle exploded, the fact that the bottle had no visible flaw and conformed to manufacturing specifications did not prevent appellate court (in granting plaintiff's motion for judgment notwithstanding the verdict) from finding bottle unreasonably dangerous).

---

**6.** The manager of Joyce's Food Land testified at trial that he loaded the Pepsi machine the morning of Bredberg's accident. According to the manager, he loaded the machine properly (nose of the bottle first into the machine). After the accident, he checked out the machine from which Bredberg purchased the Diet Mountain Dew and all of the bottles remaining in the machine were properly loaded.

Defendants had every right to, and did, argue to the jury that the facts did not support plaintiff's strict liability claims, specifically that plaintiff did not prove that its products were either in a defective condition or unreasonably dangerous at the time they left defendants' possession. Plaintiff, however, met his burden to support his claims.

Because we believe Bredberg presented substantial evidence on all of the strict liability elements, including the defective condition and unreasonably dangerous elements against both PepsiCo and Pepsi Cola, we believe a jury question was generated on the strict liability claims and the district court properly overruled PepsiCo's and Pepsi Cola's motions for directed verdict and denied their post-trial motions for judgment notwithstanding the verdict.

IV. *Motions for new trial.* Along with PepsiCo's and Pepsi Cola's motions for judgment notwithstanding the verdict, defendants contend that, in the alternative, the district court should have granted their motions for a new trial. *See* Iowa R.Civ.P. 244(f). They contend the verdict reached by the jury was a compromise or "quotient" verdict and, therefore, was inconsistent with the facts and law and did not effectuate substantial justice. Defendants point to the jury verdict which assessed fifty percent of the fault for the accident to plaintiff.

■ We do not believe the district court abused its discretion when it denied the motions for new trial. The verdict is consistent with the intent and purpose of the comparative fault statute, which allows the fact finder to assign fault (without explanation) to one or more parties claimed to have contributed to plaintiff's injuries. *See* Iowa Code § 668.3(2).

V. *Disposition.* After considering the law and the facts in the present case (and construing the facts and inferences therefrom in a light most favorable to the plaintiff), we conclude plaintiff did present substantial evidence on each element of his strict liability claims against PepsiCo and Pepsi Cola. The district court correctly overruled defendants' post-trial motions.

We vacate the decision of the court of appeals and affirm the judgment of the district court.

Costs on appeal are taxed one-half to PepsiCo and one-half to Pepsi Cola.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**