### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT SAVANNAH,

# JANUARY TERM, 1857.

Present—JOSEPH H. LUMPKIN, ⎫
    CHARLES J. McDONALD, ⎬ Judges.
    HENRY L. BENNING, ⎭

---

No. 1.—JOHN CARTLEDGE and wife, plaintiffs in error, *vs.* JOHN M. CUTLIFF and wife, defendants in error.

[1.] A submission of a cause pending in Court was made, by consent of parties, to A. B. and C., "The unanimous award of whom, in writing, or the award of A., *or* either of the others, duly returned to the Court, was to be made the judgment thereof." *Held*, that the award, in writing, of A. and B., two of the referees, was sufficient. Should not the submission be read The award of A. *and* either of the others? *Quere.*

[2.] The death of one of the arbitrators, subsequently to the award, but before the same is returned to Court, will not vitiate the award.

[3.[ If, by the terms of the submission, the arbitrators are made the judges, both of the law and the facts, their award will be valid, although against law. The Courts will in such case conform to the opinion of the judges chosen by the parties; and give an authority to their acts which they would not do to their own.

[4.] But where a case pending in Court, is referred by the Court itself, more to the arbitrators as Masters in Chancery than in any other capacity, the Court would not feel itself restrained from inquiring, whether or not there was that sort of mistake made in law as would vitiate the award.

[5.] In a suit against a trustee, appointed and qualified prior to the Act of 1847, (*Cobb Dig.* 336) and the pleadings and proofs show, that it is a case for simple

interest only, the rule for calculating interest on balances in the hands of the guardian, executor or administrator is this: 8 per cent. up to the 1st of January 1846; 7 per cent. for the next eight years thereafter; and 6 per cent. compounded annually, from the 1st of January 1854, up to the time of the final settlement.

In Equity, in Columbia Superior Court. Decision by Judge HOLT, March Term, 1856.

The bill in this case was filed by John M. Cutliff and wife, against John Cartledge and wife, former guardian of Mrs. Cutliff, for account and settlement of her estate &c.

Pending the cause at September Term, 1855, the following rule of reference was made, viz:

"John M. Cutliff and wife
vs.
John Cartledge and wife,
    guardian, &c.          } Bill for account, &c.

"By consent of parties, it is ordered by the Court, that the above stated cause be refered to the arbitrament and award of A. J. Miller, Robert Toombs, and B. B. Moore, the unanimous award, in writing, or the award of said A. J. Miller, or either of the others, duly returned to the Court, shall be the judgment thereof."

By virtue of the aforesaid order, A. J. Miller and B. B. Moore, two of the arbitrators therein named, made their award, dated 20th September, 1855, and attached thereto the paper containing the data, calculations and estimates upon which their award was based.

At the March Term, 1856, of the Superior Court, complainant's Solicitor presented said award, and moved that it be made the judgment and decree of the Court.

To which motion the defendants' counsel objected:

1st. Because the award was not made by all the referees, or either or one of them, as required by the rule.

2d. Because A. J. Miller, one of the arbitrators who had joined in and signed the award, had died before the same

had been returned and submitted for the sanction and judgment of the Court.

3d. Because the order of reference submitted the case *as made by the bill and answer* to arbitrament; and from the paper accompanying the award, it was manifest that the rule of computing and compounding interest, adopted by the arbitrators, was erroneous and contrary to law, and the award, being based upon said computations, was likewise illegal and void.

Which objections the Court overruled, and made the award the judgment of the Court, whereupon counsel excepted.

Jno. C. Snead & Sons, for plaintiff in error.

No counsel appeared for defendants in error.

*By the Court.*—Lumpkin, J. delivering the opinion.

This cause, by the consent of parties, was referred to the arbitrament of A. J. Miller, Robert Toombs, and B. B. Moore, the unanimous award of whom, in writing, or the award of A. J. Miller, or either of the others, duly returned to the Court, was to be made the judgment thereof.

It appears that an award was made by two of the persons named, to wit, Mr. Miller and Mr. Moore, and returned to the Court; Mr. Miller having died before the meeting of the Court to which it was returnable. It does not appear whether Mr. Toombs participated in the arbitration.

A motion having been made, to make the award the judgment of the Court, it was resisted upon the grounds: first, that it was not made in terms of the submission; and secondly, because Mr. Miller had departed this life before the return of the award.

[1.] We think it likely that the rule of reference was not worded precisely as it was intended, and that instead of reading, that the award of A. J. Miller *or* either of the others, it should have been written, *and* either of the others. But

waiving this verbal criticism, and the right of the Court to substitute *and* for *or*, we hold that the terms of the reference justify the award as made. If any one of the arbitrators was empowered to make the award: *a fortiori* did two of them possess the authority.

[2.] As to the death of Mr. Miller before the return of the award. Mr. Smith does say, in his work on Chancery Practice, that if one of the arbitrators dies there can be no award; and in support of this dictum he cites the case of *Crowshay vs. Collins*, (1 *Swanston's Rep.* 40.) But by reference to the report, it will be found that no such principle is there discussed or decided, or even alluded to. We presume the author must have meant, where the arbitrator dies before the award is made. Here it was afterwards, and we cannot think that the subsequent death of one of the arbitrators, vacated the award.

The award having been received, counsel for defendant moved to set it aside, because it was contrary to law in this, that the arbitrators assumed an erroneous basis for computing interest.

[3.] A question arises here, namely: Conceding that the calculation was illegal, are the parties bound by the decision? Can the Court review and rectify it? And that depends upon the answer to the enquiry: Were the arbitrators, by the terms of the submission, judges both of the law and the facts of the case? and is their award, therefore, valid, notwithstanding it is against law? We think not.

Where parties, by private agreement, leave their disputes to arbitrators, to be settled between them, the Court will conform to the opinion of the judges chosen by the parties, and give an authority to *their* acts which they would not to their *own*. And the same may be true, where a reference is made even of a cause pending, by the out-doors agreement of the parties, under the Judiciary Act of 1799. (*Cobb*, 487.)

But here the case in Court was referred by the Court itself, more to the gentlemen selected as Masters in Chancery

than in any other capacity; and we apprehend, that under such circumstances, the Court would hardly feel itself restrained from examining whether or not there was that sort of mistake made *in law* as would vitiate the award. (1 *Price* 81; 2 *Mad.* 6; 6 *Taunton* 256; 13 *East.* 357; 9 *Ves.* 364; 3 *East.* 13; 6 *Ves.* 282; *Caldwell on Arbitration*, 53.)

[4.] Sustaining the right of the Court, then, to revise this award, and holding that the case made by the pleadings and proofs, was one for simple interest only, what was the proper rule for computing interest?

The Act of 1847, (*Cobb* 336,) provides, that from the first day of January, 1848, the interest to be charged against guardians, executors and administrators, already appointed and qualified, on trust funds in their hands, shall be at and after the rate of seven per cent. per annum, for the first six years thereafter, without compounding; and after the expiration of the first six years from the first day of January, 1848, the computation of interest shall be at and after the rate of six per cent. per annum, to be compounded at that rate annually thereafter.

Here we have, then, a definite rule, prescribed by statute, for computing the interest in this case, since the first day of January, 1848, namely: at the rate of seven per cent. for the first six years subsequent to that date, without compounding; and six per cent., compounded annually, thereafter.

But how shall the interest be calculated on the balances in the hands of the guardian prior to January, 1848, and up to that time?

On all sums received before the first of January, 1846, at eight per cent. to that date, that being the lawful rate of interest up to December, 1845; and at the rate of seven per cent. for the two succeeding years, the rate of interest having been reduced from eight to seven per cent. at that date.

So then, we shall have a running interest of eight per cent. to the first of January, 1846; at seven per cent. for the next eight years; and six per cent., compounded annually, there-

after, until the final settlement is made. And this rule is unquestionably accurate. It is true, it may be doubted whether eight and not seven per cent. should not be charged between January, 1846, and January, 1848. But inasmuch as the guardian could only make seven per cent. during that period, under the facts of the case, he was only liable for lawful interest.

As the arbitrators, as appears from their figures, which we think were properly admitted in evidence, adopted a rule totally different from this, and one not justified by law, we feel bound to reverse the judgment below, and direct the award to be set aside, unless the complainant will agree to remit the difference between the sum found by the arbitrators and the true amount due, to be ascertained upon the basis herein prescribed.