70280. COTTON STATES MUTUAL INSURANCE COMPANY
v. NUNNALLY LUMBER COMPANY.
(335 SE2d 708)

BEASLEY, Judge.

Arbitration.

In July of 1980, the Hoffmans contracted with Nunnally to construct a house. The contract required that the Hoffmans purchase and maintain property insurance on the construction site to the full insurable value, to include the interests of Nunnally as well as the Hoffmans and any subcontractors and subsubcontractors.

In October, the Hoffmans applied to Cotton States for an insurance policy and forwarded a premium check for the policy. The house was nearly completed when it was destroyed by fire on January 13, 1981. No policy of insurance had ever been issued by Cotton States prior to the fire, but Cotton States paid the Hoffmans on February 25 for the loss. When the Hoffmans finally received the written policy, it was a "farm and ranch" policy and not a "builder's risk" policy, as had been initially applied for. Nunnally was not included as a payee on the draft. The contractor, believing it was still owed money from the Hoffmans for work performed before the fire, filed liens on the property and also made a demand for arbitration pursuant to the construction contract. The Hoffmans petitioned the court for a stay of arbitration and for removal of a cloud from the title. Nunnally responded with a motion to compel arbitration. The Hoffmans amended their complaint to add a claim for damages based on negligence in causing the fire. Cotton States moved and was permitted to intervene and align itself with the Hoffmans, asserting that it was subrogated to their rights against Nunnally. The insurer also successfully moved the court to compel arbitration, which the Hoffmans contested but Nunnally did not.

All claims of the parties were submitted to a panel of three arbitrators selected by the parties. After three days of hearings, the arbitrators awarded $12,232.50 to Nunnally on the construction contract and denied the "counterclaim" of Cotton States; the fees and expenses of the costs of arbitration were to be borne equally by the parties. Finally, the arbitrators provided: "This Award is in full settle-

ment of all claims submitted to this arbitration."

Cotton States petitioned for rehearing, which was denied, and petitioned the court to vacate the award. Nunnally sought court confirmation of the award. Following a hearing and the submission of briefs, the trial court entered an extensive order and judgment. It confirmed the award, made it the judgment of the court, and foreclosed and declared Nunnally's lien as a special lien against the Hoffmans' property. Only Cotton States appealed. It contends that the court erred in denying its petition to vacate the arbitrators' award, in failing to enter judgment in its favor as a matter of law, in granting Nunnally's application to confirm the award, and in making such award the judgment of the court.

1. Cotton States maintains that the arbitrators' award reveals on its face such a total misapprehension by the arbitrators of the true nature of the claims, parties and issues as to deprive the award of any claim of fairness and propriety in the disposition of the claims.

The thrust of the insurer's argument here is that the language in the award denominating Cotton States' claim as a "counterclaim" shows total misunderstanding by the arbitrators about the alignment of the parties and their claims in the litigation, so as to invalidate the award.

The voluminous record conclusively demonstrates otherwise. The issues were clearly set out by the court in the order submitting the disputes to arbitration, the parties set out their positions before the arbitration hearings, and all was thoroughly aired during the hearings. Though terse, the award covers all of the claims. The mere denomination of the insurer's interest as a "counterclaim," absent any evidence of misunderstanding by the arbitrators, is of little significance. The arbitrators' use of the term was but a choice of vocabulary in a nonlitigation setting rather than a designation of pleadings and thus of status in the context of the Civil Practice Act. See OCGA § 9-11-13. This is supported by the fact that upon the insurer's petition for rehearing, the arbitrators offered to change the objected-to terminology from "counterclaim" to "claim," but Cotton States declined. The use of "counterclaim" was not inappropriate because the dispute had originated with Nunnally's lien and demand for arbitration of the unpaid contract price and had been countered with the Hoffmans' assertion of negligence. Cotton States intervened to stand with the Hoffmans in that responsive position.

Arbitrators need not be lawyers. To arbitrate a construction contract, "the court shall seek to appoint persons having general knowledge and experience as to the type of dispute or controversy to be arbitrated." OCGA § 9-9-87 (c). When such persons use language outside the framework of a lawsuit which may have a precise legal meaning, it is not robbed of its more generally understood meaning.

Moreover, the law provides for changing the award when "[t]here [is] . . . a mistake in the description of any . . . thing . . . referred to in the award; . . . or [t]he award is imperfect in a manner of form, not affecting the merits of the controversy." OCGA § 9-9-91 (a) (1) and (3). Even in the more formal litigation setting, substance rather than nomenclature of legal pleadings determines their nature. *Cotton v. Fed. Land Bank*, 246 Ga. 188, 191 (269 SE2d 422) (1980). The "title" that the arbitrators gave Cotton States' claim would not have been binding on the trial court in its consideration of the propriety of the award. See *Bank of Cumming v. Moseley*, 243 Ga. 858, 859 (257 SE2d 278) (1979).

We find no error below based on misapprehension of the parties' claims on the part of the arbitrators due to the use of the word "counterclaim."

2. Cotton States contends that the arbitrators' award failed to answer or rule upon the issues submitted for determination. We do not agree.

The record shows that the arbitrators held a prehearing conference at which the parties were required to state their respective positions and the issues to be resolved. As Cotton States admits, "the issues to be resolved by the arbitrators were clearly defined."

The award on its face shows that the arbitrators made determinations about the dispositive issues; they were required to do no more. They determined that the Hoffmans had no valid claim for damages from Nunnally caused by the fire which could be set off against the sum found owed by the Hoffmans to Nunnally for construction. Thus the panel was compelled to deny the insurer's claims to subrogation here. Whether it had such a right or whether it had been waived was moot, once Nunnally was absolved of liability for the damage resulting from the fire.

OCGA § 9-9-90 (a) provides in part that, "[t]he award shall be in writing and signed by the arbitrators joining in the award." There is no mandate that the award include specific findings or reasons, or that it expressly address each and every issue and collateral issue arising in an arbitration. Of course, the trial court may vacate an arbitrators' award for, inter alia, *"such imperfect execution of it that a final and definite award upon the subject matter submitted was not made; . . ."* OCGA § 9-9-93 (b) (3). (Emphasis supplied.) Here, the arbitrators made a final and definite award upon the submitted subject matter. There were four primary issues at the outset. First, was the dispute subject to arbitration pursuant to the contract? That was decided affirmatively by the court, leaving three issues for the arbitrators. Did the owners owe money to the contractor for construction? The arbitrators found that they did and awarded $12,232.50. Did the contractor cause the fire through negligence? The arbitrators were not

persuaded that it did and thus found in favor of Nunnally on this issue, granting the Hoffmans nothing. Finally, was the insurer subrogated to the rights of the owner regarding any negligence for the fire? There was no need to reach this question because the contractor was found not to be liable for the fire. Deciding the issues between the original parties to the dispute rendered moot the additional issues raised by the intervenor. Consequently, the denial to Cotton States brought the matter to an end.

Appellant's dissatisfaction with the brevity of the award must be addressed to the legislature or to the American Arbitration Association or to the construction contract drafters. In the Georgia Arbitration Code for Construction Contracts, the legislature does not require findings of fact as mandated when a judge is acting instead of a jury, OCGA § 9-11-52, or when an administrative law judge is deciding a workers' compensation case, OCGA § 34-9-102 (f). By its rules, AAA does not require the award to contain the reasoning or facts found by the arbitrators. See Sections 42 & 43. The construction contract did not provide for any specific format for the award in the event of arbitration. Yet here, the insurer itself petitioned for arbitration under this system and thus it is bound by the procedure it chose. No effort was made to depart from it by seeking a prior agreement or stipulation that findings and reasons be articulated or that the arbitrators answer certain questions in a manner similar to a special verdict form. Appellant's assertion that the procedure it invoked lacks due process is unsupported and does not, for any reason advanced, require reversal.

3. The insurer also asserts that the award was totally inconsistent with the overwhelming weight of the evidence, and that it was entitled to an award in its favor as a matter of law; that is, that it was clearly subrogated to the Hoffmans' rights of recovery and that Nunnally's negligence was as a matter of law shown to have caused the fire loss. In order to prevail, the insurer must show that Nunnally is liable for negligence in causing the fire and also that the insurer had a right of subrogation which was not waived. A negative answer to either one of the issues posed would preclude the necessity of reaching the other question, regardless of which was addressed first, because the insurer needed an affirmative answer to both questions in order to prevail. We address the liability question first.

The record contains conflicting testimony regarding the cause of the fire. Although Cotton States' expert pinpointed it to arcing inside a blower motor which continued outside because the fuses were inadequate, the opponent's witnesses testified that the blower had been turned off; their expert testified that there was no evidence of arcing.

Nor, as the insurer suggested, does the evidence in this case unequivocally support a finding of liability by Nunnally based on res

ipsa loquitur. Res ipsa loquitur is a rule of evidence which permits an inference of negligence to arise when the necessary elements are present. See *Hall v. Chastain*, 246 Ga. 782, 783 (1) (273 SE2d 12) (1980); *Gresham v. Stouffer Corp.*, 144 Ga. App. 553, 554 (241 SE2d 451) (1978). The elements of the doctrine are: injury of a kind which ordinarily does not occur in the absence of someone's negligence; injury caused by an agency or instrumentality within exclusive control of the defendant; and injury not due to any voluntary action or contribution on the part of plaintiff. *Fender v. Colonial Stores*, 138 Ga. App. 31, 38 (3) (225 SE2d 691) (1976). The presence of any negligence on the part of Nunnally here resulting in the house fire was a question of fact for the arbitrators. They had province to judge the credibility of the witnesses and the weight of the evidence and their apparent judgment is supported by the evidence. See *Cartledge v. Cutliff*, 21 Ga. 1 (1857).

4. Lastly, Cotton States contends that the trial court applied an erroneous standard of review of the arbitrators' award and made erroneous findings of fact not supported by the record.

The standard of review of the trial court of an application to vacate an arbitrators' award made in the case of a construction contract is governed by statute. OCGA § 9-9-93 reads in pertinent part: "The award shall be vacated on the application of a party who either participated in the arbitration or was served with a demand for arbitration if the court finds that the rights of that party were prejudiced by: (1) [c]orruption, fraud, or misconduct in procuring the award; (2) [p]artiality of an arbitrator appointed as a neutral; (3) [a]n overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made; or (4) [a] failure to follow the procedure of this part, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection. . . ."

The insurer is not claiming that there was any manner of corruption, fraud, misconduct, partiality, or failure to follow procedure on the part of the arbitrators. There is no evidence of overstepping of their authority by the arbitrators and we have already determined in Division 2 that their authority was not imperfectly executed so that a final and definite award upon the submitted matter was not made. These are the exclusive statutory grounds upon which the trial court may vacate an arbitrator's award made in the context of a construction contract.

The function of the trial court in proceedings to confirm or vacate an arbitration award should be severely limited in order not to frustrate the purpose of avoiding litigation by resorting to arbitration. Where no ground exists for vacating or modifying the award, it is the duty of the court to confirm it, and proper for it to do so. See 6 CJS 362, Arbitration, § 121 (b). The court must confirm an award upon

application of a party made within one year after its delivery to him, unless the award is vacated or modified by the court as provided by statute. See OCGA § 9-9-92.

Cotton States maintains that inasmuch as the trial court's order recites that "this court believes that there is some evidence to support the award and the form thereof, and therefore, this court is without authority to vacate the award. . . ." that it applied an "any evidence" standard rather than the statutorily-mandated one. First, the order also provides that the award is in accord with current statutory and case law and clearly rejects Cotton States' asserted statutory ground for vacating the award. Even if we assume only for the sake of argument, that the court did apply an erroneous standard, it is clear that it reached a proper determination. A judgment which is right for any reason will be affirmed. *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 539 (2) (307 SE2d 914) (1983).

Cotton States also challenges as erroneous the trial court's findings of fact. Findings of fact and conclusions of law are unnecessary in the decisions of motions such as the one at bar. See OCGA § 9-11-52. However, the trial court made its findings of fact, and we shall not set them aside as they are not clearly erroneous and indeed, are supported by the record. See, e.g., *Ridgley v. Helms*, 168 Ga. App. 435, 438 (1) (309 SE2d 375) (1983).

Cotton States has raised no meritorious argument for reversing the trial court's confirmation of the subject arbitrators' award and for the court's de facto denial of the application to vacate the award.

5. Appellee Nunnally Lumber Company has moved this court to affirm judgment rendered against Marshall C. Hoffman and Jacqueline L. Hoffman. Our decision in this case renders unnecessary any separate disposition of the motion.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 26, 1985.

*E. Wycliffe Orr*, for appellant.
*H. A. Stephens, Jr., William P. Rowe, Paul R. Koehler*, for appellee.