**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 16, 2021**

# In the Court of Appeals of Georgia

A20A1688. A&M HOSPITALITIES, LLC et al. v. ALIMCHANDANI.    DO-058

A21A0525. ALIMCHANDANI v. A&M HOSPITALITIES, LLC.    DO-021

DOYLE, Presiding Judge.

A decade after Prenita Alimchandani and Jane Motley created A&M Hospitalities, LLC, Alimchandani filed this action against A&M, Jane, and David Motley (Jane's husband), seeking to judicially dissolve A&M and asserting claims for breach of contract and breach of fiduciary duty.[1] The trial court appointed Christopher A. Cohilas as a limited receiver, which appointment was affirmed by this

---

[1] Alimchandani had a 25 percent ownership in A&M, and Jane Motley had a 75 percent ownership. In 2006, Jane transferred half of her interest in A&M to her husband, David Motley.

Court,[2] and later appointed him as an auditor/special master. Alimchandani filed an

arbitration demand, and the arbitrator entered an award in favor of A&M and JDS&J

Enterprises, LP,[3] on Alimchandani's claims and in favor of JDS&J on its

counterclaim, and the trial court eventually confirmed the arbitration award. In Case

No. A20A1688, the defendants appeal the trial court's order appointing Cohilas as

special master/auditor, and in Case No. A21A0525, Alimchandani appeals the trial

court's confirmation of the arbitration award. For the reasons that follow, we affirm

in Case No. A21A0525, and in Case No. A20A1688, we reverse and vacate the trial

court's order appointing Cohilas as special master/auditor.[4]

The record shows that Jane and Alimchandani created A&M, which develops

and operates hotels throughout Georgia, Florida, and Alabama.[5] According to

Alimchandani, the Motleys misappropriated and wasted company assets and failed

---

[2] See *A&M Hospitalities, LLC v. Alimchandani*, 351 Ga. App. 310 (828 SE2d 615) (2019), cert. denied, *A&M Hospitalities, LLC v. Alimchandani*, Case No. S19C1563 (decided Feb. 10, 2020).

[3] In 2012, the Motleys transferred their ownership interests to JDS&J.

[4] Because these matters were decided based on the same facts and arise from the same trial court case, we consolidate these appeals for purposes of this opinion.

[5] A detailed recitation of the underlying facts and claims is set forth in *A&M Hospitalities*, 351 Ga. App. at 310-314.

to make required distributions, so she filed suit to judicially dissolve A&M and asserted breach of fiduciary duty and RICO claims.[6] In January 2018, Alimchandani filed an arbitration demand, and she also filed a motion for immediate appointment of a receiver. In July 2018, the trial court appointed attorney Christopher Cohilas as a limited receiver for the purposes of audit and discovery. With regard to payment, the limited receiver order provided that Cohilas was to receive "reasonable compensation" for his services, paid by A&M.[7] The defendants appealed the limited receiver order.

Following an August 2018 arbitration hearing, the arbitrator issued her final award on September 28, 2018, finding in favor of the defendants on Alimchandani's

---

[6] See id. at 311.

[7] In full, the payment provision states: "The Receiver and its professionals shall receive reasonable compensation for services, payable from the funds of the Company. The Receiver's fee shall be based on the standard hourly billing rate of the employees of the Receiver plus reasonable out-of-pocket expenses until the date of the Receiver's discharge. The Receiver may establish a segregated Retainer Account from the funds of the Company. Every month thereafter, the Receiver shall submit an invoice to the parties for services as a Receiver and, from time to time, invoices for the services of its professionals. Ten days after submission of such invoice and, with no objection by any party, the Receiver shall be entitled to receive payment equal to the amount set forth in the invoice from the Retainer Account. The Retainer Account balance may[ ]be replenished as necessary from the Company's funds. Upon a request for establishment or replenishment of funds in the Retainer Account, the managers of the Company shall cause the requested amount to be paid from Company funds towards the Retainer Account within three business days."

claims and in favor of JDS&J on its counterclaims, awarding damages in the amount of $95,093.52, which included $70,800 for attorney fees. On October 1, 2018, the defendants moved for confirmation of the award, and on December 28, 2018, Alimchandani filed a motion to vacate the arbitration award.

On May 15, 2019, this Court affirmed the limited receiver order in a published opinion, concluding that based on the language of the order, the trial court had actually appointed Cohilas as an auditor, not a receiver, and that the appointment was not an abuse of discretion.[8] While the appeal was pending, the defendants moved for clarification of the appointment order, challenging Cohilas's work. In July 2019, the defendants filed an objection to Cohilas's billing statements through May 31, 2019, and the trial court overruled their objections and ordered all of the fees and expenses paid. On October 7, 2019, based both on this Court's opinion and the defendants' motion, the trial court issued a separate order ("the special master/auditor order") clarifying Cohilas's appointment. In the order, which was written by Cohilas, the trial court explained that Cohilas was appointed as an auditor and special master "as those terms are contemplated and authorized by OCGA §§ 9-7-1, 9-7-2, 9-7-3, and Uniform Superior Court Rule [("USCR")] 46." Specifically, the court vested Cohilas with

_____

[8] *A&M Hospitalities*, 351 Ga. App. at 315-316 (1).

authority to, among other things: conduct an accounting of A&M ; "hear motions, allow amendments[,] and pass upon all questions of law and fact" ; "address all pretrial and discovery matters"; "monitor implementation of and compliance with all orders of the court[,] and [h]e is permitted to impose upon a party any non-contempt sanction provided by OCGA §§ 9-11-37 and 9-11-45"; "conduct all trial proceedings and make and recommend findings of fact on all issues to be decided by the court without a jury"; and engage in ex parte communications with the parties, counsel, and the trial court for certain purposes. The special master/auditor order also restated the

payment provision in the initial order, with minor changes.[9] The defendants appealed the special master/auditor award on October 11, 2019.

On December 6, 2019, the trial court entered an order of confirmation and judgment of the final arbitration award, and Alimchandani appealed.[10]

*Case No. A20A1688*

---

[9] The new payment provision provides: "The Auditor/Special Master and its professionals shall receive reasonable compensation for services, payable from the funds of the Company. The Auditor/Special Master's fee shall be based on the standard hourly billing rate of the employees of the Auditor/Special Master plus reasonable out-of-pocket expenses until the date of the Auditor/Special Master's discharge. The Auditor/Special Master may establish a segregated Retainer Account from the funds of the Company. Every month thereafter, the Auditor/Special Master shall submit an invoice to the parties for services as an Auditor/Special Master and, from time to time, invoices for the services of its professionals. The parties shall have ten (10) days to object to invoices of the Auditor/Special Master and his professionals. All objections shall be made to specific line items; no general objections shall be permitted. Ten (10) days after submission of such invoice the Auditor/Special Master and his professionals shall be entitled to receive payment from the Retainer Account equal to the amount set forth in the invoice for line items for which there is no objection. The charges objected to by a party shall be paid upon Court approval of same. The Retainer Account balance may be replenished as necessary from the Company's funds. Upon a request for establishment or replenishment of funds in the Retainer Account, the managers of the Company shall cause the requested amount to be paid from Company funds towards the Retainer Account within three business days."

[10] According to Alimchandani's brief, the arbitration award was only confirmed after the defendants filed a mandamus action against the trial judge in the Superior Court of Colquitt County. See *A&M Hospitalities, LLC, & JDS&J Enterprises, LP v. Honorable Brian A. McDaniel*, Civil Action No. 2019CV0430, filed October 29, 2019.

6

1. The defendants contend that the trial court abused its discretion by appointing Cohilas as special master/auditor under USCR 46 and OCGA § 9-7-1 et seq.[11] We agree.

"'We review the appointment of a receiver, a special master, or an auditor for an abuse of discretion.'"[12]

Georgia law distinguishes between the role played by a receiver and an auditor. A trial court may appoint an auditor in all cases "involving matters of account, if the case shall require it," "to investigate the matters of account and report the result to the court."[13] Thus, "unless modified by the order of appointment," an auditor generally is granted the authority "to hear motions, allow amendments, and pass upon all questions of law and fact," including the "power to subpoena and swear

---

[11] On July 15, 2020, the trial court notified the parties that it would be entering an order directing that Cohilas continue with the audit and that the court "[would] be appointing a special master to move forward with hearing all other matters[, including] . . . making determinations regarding any disputes that may arise in respect to the audit. The special master will be responsible for hearing all non-jury matters and shall have broad authority as set forth in the [c]ourt's prior order." Alimchandani argues that based on that email, the defendants' arguments are "either foreclosed or moot." But a notification from the court about a future ruling is not a ruling. See *Tolbert v. Toole*, 296 Ga. 357, 362 (3) (767 SE2d 24) (2014). And there is no order in the record appointing another special master; instead, the trial court entered an order on July 15, 2020, extending the prior special master/auditor order until January 15, 2021, or until further order of the court.

[12] *A&M Hospitalities*, 351 Ga. App. at at 313 (1).

[13] OCGA § 9-7-3.

7

witnesses and compel the production of papers."[14] And under OCGA § 9-7-1, the duties previously performed by a 'master' in the superior court are now performed by an 'auditor,' although . . . [USCR] 46, which was adopted effective June 4, 2009, permits the trial court to appoint a special master to perform certain duties enumerated therein.[15]

USCR 46 (A) (1) permits a trial court to:

appoint a [special] master: (a) to perform duties consented to by the parties; (b) to address pretrial and post-trial matters that the court cannot efficiently, effectively or promptly address; (c) to provide guidance, advice and information to the court on complex or specialized subjects, including, but not limited to, technology issues related to the discovery process; (d) to monitor implementation of and compliance with orders of the court or, in appropriate cases, monitoring implementation of settlement agreements; (e) to investigate and report to the court on matters identified by the court; (f) to conduct an accounting as instructed by the court and to report upon the results of the same; (g) upon a showing of good cause, to attend and supervise depositions conducted outside of the jurisdiction; and (h) to hold trial proceedings and make or recommend findings of fact on issues to be decided by the court without a jury if appointment is warranted by (i) some exceptional condition, or (ii) the need to perform an accounting, to resolve a difficult computation

---

[14] OCGA § 9-7-6.

[15] (Punctuation omitted.) *Petrakopoulos v. Vranas*, 325 Ga. App. 332, 337-338 (2) (750 SE2d 779) (2013),reversed in part on other grounds by *Petrakopoulos v. Vranas*, 296 Ga. 48 (764 SE2d 858) (2014).

of damages or if the matter involves issues for which a special substantive competence would be beneficial.

USCR 46 (A) (2) provides:

A master must not have a relationship to the parties, counsel, action, or court that would require disqualification of a judge under applicable standards, unless the parties consent with the court's approval to appointment of a particular person after disclosure of all potential grounds for disqualification.

OCGA § 24-6-605 prohibits a judge from testifying as a witness in a matter before him. Similarly, the Code of Judicial conduct prohibits a judge from participating in a matter in which he has "personal knowledge of disputed evidentiary facts" or if he has been a witness in the proceedings.[16]

Here, Alimchandani's attorney engaged in numerous ex parte communications with Cohilas, including emails addressing litigation strategy.[17] And Alimchandani has

---

[16] Ga. Code of Judicial Conduct, Canon 2.11 (A) (1), (6).

[17] For example, Alimchandani's attorney sent Cohilas a February 14, 2019 letter discussing and requesting: a recommendation for independent counsel for A&M; that Cohilas testify regarding contempt, disqualification of defense counsel, and expanding the receivership; and that Cohilas move for contempt; and an emergency temporary restraining order. On March 25, 2019, Alimchandani's attorney emailed Cohilas: "Chris, any clue as to what is going to happen tomorrow? If the defendants think tomorrow is going to be a one-sided attack on myself, they are in for a big surprise. Their discovery deficiencies are

listed Cohilas as a witness in the case in her interrogatory responses, and her second amended complaint is based on and incorporates Cohilas's three status reports and relies on his factual observations and testimony. Further, in a motion for contempt against the defendants, Cohilas stated that his "duties are to the [c]ourt and to the Company, i.e.[,] all shareholders." Similarly, in a letter to A&M's accountant, Cohilas stated that pursuant to the order appointing him as the company's limited receiver, he is "deemed to be the [c]ompany's representative with regard to accountant/client confidentiality among other things."

In addition to these facts which disqualify Cohilas as special master in this case, it is clear that he is performing an impermissible combination of roles by acting as investigator, witness, and judge of fact and law, which combination requires him to assess the credibility of his own work. These are fundamentally incompatible duties and are at odds with the role of a special master. Accordingly, the trial court's appointment of Cohilas as special master/auditor is reversed.

2. The defendants also contend that the trial court erred by requiring the defendants to pay 100 percent of Cohilas's fees and to do so prior to final judgment.

---

shameful. A&M's managers are dangerous and should be immediately enjoined. [Defense counsel's] representation of A&M is a sad joke."

In Georgia, an auditor's fees "shall be determined and fixed by the trial judge," and they "may be apportioned between and among the parties at the discretion of the judge."[18] "The fees of the auditor shall be assessed as court costs and shall be paid prior to the filing of any appeal from the judgment of the court[.]"[19] With regard to special master fees, USCR 46 (H) (1) provides that "[t]he court shall fix the master's compensation on the basis and terms stated in the order of appointment. . . ." And

> [t]he court must allocate payment of the master's compensation among the parties *after considering the nature and amount of the controversy, the means of the parties, and the extent to which any party is more responsible than other parties for the reference to a master*. An interim allocation may be amended to reflect a decision on the merits.[20]

Here, the initial limited receiver order stated that Cohilas and his professionals "shall receive reasonable compensation for services, payable from the funds of the Company." The subsequent special master/auditor order stated the same, adding that "the [c]ourt previously considered the fairness of imposing likely expenses on the parties and further finds that the entry of this order and the [limited receiver o]rder

---

[18] OCGA § 9-7-22 (a).

[19] OCGA § 9-7-22 (c).

[20] (Emphasis supplied.) USCR 46 (H) (3).

11

has and will continue to serve and provide efficiency to the process as opposed to delay."

Pretermitting whether the order is sufficiently specific for this Court to decide whether the trial court considered the factors set forth in USCR 46 (H) (3) or whether it abused its discretion in allocating the entirety of the fees to the defendants under USCR 46 and OCGA § 9-7-22 (a), the trial court erred by requiring the defendants to pay Cohilas's fees prior to final judgment.

"The fee[s] of an auditor [are] in the nature of costs,"[21] and OCGA § 9-7-22 (c) requires that the fees be included in the judgment. Further, OCGA § 9-15-3 provides: "The several officers of court are prohibited from demanding the costs in any civil case or any part thereof until after judgment in the same, except as otherwise provided by law." Accordingly, the trial court erred by requiring the defendants to pay Cohilas's auditor fees before the final judgment,[22] and requiring them to advance funds to his firm for his special master fees before court approval of his bill violates

---

[21] *Hicks v. Atlanta*, 187 Ga. 314, 314 (2) (200 SE 301) (1938), citing *Fitzpatrick v. McGregor*, 133 Ga. 332, 344 (65 SE 859) (1909).

[22] See *Mendenhall v. Kingloff*, 215 Ga. 726, 728 (2) (113 SE2d 449) (1960) (holding under the predecessor statute to OCGA § 9-15-3 that a court was not authorized to require a party to advance costs to the auditor and accountant before judgment).

12

USCR 46 (G), which requires the court to review a special master's report and afford the parties an opportunity to be heard and to object, before affirming it.[23]

*Case No. A21A0525*

3. Alimchandani argues that the trial court erred by confirming the arbitration award because requiring her to pay JDS&J's attorney fees as part of the counterclaim award violated the parties Operating Agreement. We find no basis for reversal.

"The function of the trial court in proceedings to confirm or vacate an arbitration award should be severely limited in order not to frustrate the purpose of avoiding litigation by resorting to arbitration."[24] Consistent with this policy, OCGA § 9-9-13 (b) of the Georgia Arbitration Code sets forth five exclusive statutory

---

[23] The hybrid nature of Cohilas's role and duties in this case, along with the trial court's failure to distinguish between Cohilas's fees for his duties as a special master and those as an auditor in the special master/auditor appointment order, requires us to reverse and vacate the fee portion of the award. Furthermore, in light of this Court's ruling affirming the trial court's confirmation of the arbitration award in favor of the defendants, the trial court may elect to reconsider its allocation of responsibility for Cohilas's fees and costs. Finally, because we vacate the trial court's appointment order, we express no opinion as to whether Cohilas is entitled to payment for work already performed.

[24] (Punctuation omitted.) *Amerispec Franchise v. Cross*, 215 Ga. App. 669, 670 (452 SE2d 188) (1994), quoting *Cotton States Mut. Ins. Co. v. Nunnally Lumber Co.*, 176 Ga. App. 232, 236-237 (4) (335 SE2d 708) (1985).

grounds for vacating an arbitration award upon the application of a party subject to the award:

> (1) Corruption, fraud, or misconduct in procuring the award; (2) Partiality of an arbitrator appointed as a neutral; (3) An overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made; (4) A failure to follow the procedure of [the Georgia Arbitration Code], unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection; or (5) The arbitrator's manifest disregard of the law.[25]

"The fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."[26]

> The authority of courts to review an award, pursuant to a motion to vacate, is very limited; courts cannot inquire into the merits of an arbitrable controversy; arbitrators are free to award on the basis of broad principles of fairness and equity; and an arbitrator need not make findings or state the reasons in support of the award. [When] reviewing a motion to vacate, appellate courts cannot make determinations as to the sufficiency of the evidence, as such judicial intervention would only

---

[25] See also *Brookfield Country Club, Inc. v. St. James-Brookfield, LLC*, 287 Ga. 408, 411 (1) (696 SE2d 663) (2010) (holding that the five statutory grounds set forth in OCGA § 9-9-13 (b) "are the exclusive means by which a court may vacate an arbitration award").

[26] OCGA § 9-9-13 (d).

frustrate the purpose of arbitration. The prohibition against considering the sufficiency of the evidence as grounds for vacating an arbitration award is unconditional. Therefore, a reviewing court is prohibited from weighing the evidence submitted before the arbitrator, regardless of whether the court believes there to be sufficient evidence, or even any evidence, to support the award.[27]

Here, Alimchandani contends that by awarding attorney fees as part of the damages award for JDS&J's counterclaim, the arbitrator overstepped her authority and manifestly disregarded the law. Alimchandani points to the parties' arbitration agreement (contained within their Operating Agreement), which states:

15.21. *Arbitration.* Any dispute, controversy[,] or claim arising out of or in connection with, or relating to this Agreement or any breach or alleged breach hereof shall, upon the request of the any party involved, be submitted to, and settled by, arbitration in the effect of the American Arbitration Association (or any time or at any other place or under any other form of arbitration mutually acceptable to the parties so involved). Any award rendered shall be final and conclusive upon the parties[,] and a judgement thereon may be entered in the highest court of the forum, state or federal, having jurisdiction. *The counsel's fees, except that in the discretion of the arbitrator, [sic] any award may include the cost of a*

---

[27] (Punctuation omitted.) *Doman v. Stapleton*, 272 Ga. App. 114 , 116-117 (611 SE2d 673) (2005), quoting *Haddon v. Shaheen & Co.*, 231 Ga. App. 596, 598-599 (1) (b) (499 SE2d 693) (1998).

15

*party's counsel if the arbitrator expressly determines that the party against whom such award is entered has caused the dispute, controversy[,] or claim to be submitted to arbitration as a dilatory tactic.*[28]

In the detailed arbitration award, the arbitrator concluded that because Alimchandani withheld her consent to the continuation of A&M following the transfer of membership rights from the Motleys to JDS&J (instead pursuing dissolution of A&M), Section 14.01 (a) (iii) of the parties' Operating Agreement required Alimchandani to pay JDS&J money damages caused by her failure to consent. The damages were measured by JDS&J's costs incurred in defending the arbitration, which included attorney fees. After reviewing JDS&J's submission of its attorney fees and other costs associated with the arbitration and finding them reasonable, the arbitrator awarded JDS&J: $21,038.34 in arbitration costs, $78,000 in attorney fees, $1,561 in court reporter fees, and $1,694.18 for other costs. The arbitrator declined to award the defendants attorney fees under Section 15.21 of the Operating Agreement, finding that "[the] arbitration was not brought for any dilatory purpose or as a tactic and was not frivolous."

---

[28] (Emphasis supplied).

16

Alimchandani argues that the arbitrator was only permitted to award attorney fees pursuant to Section 15.21, and therefore, by awarding attorney fees as a measure of damages for the counterclaim, the arbitrator overstepped her authority and manifestly disregarded the law.

"'Overstepping[],' like the other grounds for vacating arbitration awards[,] is very limited in scope. 'Overstepping' has been described as 'addressing issues not properly before the arbitrator.'"[29]

> [A] reviewing court is prohibited from weighing the evidence submitted before the arbitrator, regardless of whether the court believes there to be sufficient evidence, or even any evidence, to support the award. In essence, [Alimchandani] importune[s] this Court, under the veiled claim of "overstepping," to determine whether there exists any evidence to support the arbitrator's [counterclaim damages award]; this we cannot do.[30]

Here, JDS&J's counterclaim was filed, it was addressed in pre-arbitration and post-arbitration briefs and during the arbitration, and there is no evidence that

---

[29] (Citation and punctuation omitted.) *Haddon v. Shaheen & Co.*, 231 Ga. App. 596, 598 (1) (b) (499 SE2d 693) (1998), quoting *Amerispec Franchise v. Cross*, 215 Ga. App. 669, 670 (452 SE2d 188) (1994).

[30] (Citations and punctuation omitted.) *Haddon*, 231 Ga. app. at 598 (1) (b).

JDS&J's counterclaim was not properly before the arbitrator. Therefore, the arbitrator did not overstep her authority.[31] And to reverse based on a manifest disregard for the law, such "disregard must be both evident and intentional. An arbitrat[or] that incorrectly interprets the law has not manifestly disregarded it. [She] has simply made a legal mistake. To manifestly disregard the law, one must be conscious of the law and deliberately ignore it."[32] Here, although Section 15.21 of the Operating Agreement limited an award of attorney fees to those situations in which the arbitrator found that a party "caused the dispute, controversy[,] or claim to be submitted to arbitration as a dilatory tactic," there is no evidence that by awarding attorney fees

---

[31] See id.

[32] (Punctuation omitted.) *ABCO Builders, Inc. v. Progressive Plumbing, Inc.*, 282 Ga. 308, 309 (647 SE2d 574) (2007).

under Section 14.01 (a) (iii) the arbitrator intentionally disregarded the law to reach her decision.[33] Therefore, we affirm.[34]

*Judgment reversed and vacated in Case No. A20A1688; judgment affirmed in Case No. A21A0525. McFadden, C. J., and Hodges, J., concur.*

---

[33] See id. at 310 ("[Alimchandani has failed to] provide viable concrete evidence that the arbitrat[or] purposefully intended to disregard applicable law. Moreover, even if we were convinced that we would have decided this contractual dispute differently, that would not be nearly enough to set aside the award. There must be something beyond and different from mere error in law or failure on the part of the arbitrator[] to understand or apply the law; it must be demonstrated that the . . . arbitrator[] deliberately disregarded the law in order to reach the result [she] did.") (citation and punctuation omitted).

[34] To the extent that Alimchandani attempts to challenge the arbitration award on a separate basis, she abandoned those arguments in the trial court, instead challenging only the part of the award that awarded attorney fees as a measure of damages.

ON MOTION FOR RECONSIDERATION

In response to this Court's opinion in Case No. A20A1688, Christopher Cohilas, the appointed auditor and special master, filed a motion for reconsideration essentially asking this Court to clarify our opinion and to make what amount to advisory rulings on certain issues. Specifically, Cohilas contends that reconsideration is warranted to: (1) "clarify that the trial court's order appointing [Cohilas] as auditor/special master was authorized under Georgia law in light of [legal] authority, even if the Court deems the roles incongruent in this case based on unique facts[;]" (2) "clarify that a reference to ex parte communications is not a finding of any improper communications as opposed to simply referencing a factual reality of what occurred pursuant to the trial court order"; (3) "clarify that the actions taken by [Cohilas] were authorized by Court order, even if the Court deems this contact to be a basis under the unique facts of this case[,]" and that he acted "pursuant to the trial

20

court's directives"; and (4) "clarify that [Cohilas] is not and has not appeared or agreed to be a witness. . . ."

Pretermitting whether a motion for reconsideration is a vehicle available to non-party Cohilas, the issue of whether Cohilas properly *performed* his duties as an auditor and special master is not presently before this Court; rather, the issue, raised by A & M Hospitalities, LLC, in its enumeration of error, is whether the trial court's *appointment* of Cohilas was proper. Therefore, nothing in this opinion should be construed as a finding that Cohilas has engaged in improper or unlawful conduct. *Motion for reconsideration denied*.